**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL BRYANT,** | : | **Civil No. 4:14-CV-981** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

The plaintiff, Michael Bryant, appeals from the unfavorable decision of the Commissioner of Social Security denying him benefits under Titles II and XVI of the Social Security Act.  The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).  This matter has been referred to the undersigned United States Magistrate Judge for resolution on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Docs. 17, 18).

For the reasons stated herein, we order that the final decision of the Commissioner be **AFFIRMED**.

## II.   BACKGROUND AND PROCEDURAL HISTORY

At the time of this disability determination Michael Bryant was a younger individual under social security regulations, and was 46 years of age. On March 25, 2011, Bryant was assaulted while shopping.[1]  Bryant reported that he was hit in the head and back multiple times, and complained of headache, left mid back pain, and left thumb pain. (Admin Tr. 287-88).  Bryant also stated that he had a tooth knocked out, and broke two ribs during the assault. (Admin Tr. 59).  This assertion, however, is belied by several unremarkable diagnostic imaging studies performed that day, including a CT scan of Bryant's head, x-rays of his chest, an x-ray of his thumb, that showed no evidence of fracture. (Admin Tr. 280, 290-91).  During a follow up appointment four days later, Bryant reported that he was feeling better, but continued to experience pain on the left side of his chest every time he took a deep breath. (Admin Tr. 280).  Bryant was given an injection for the pain, and was provided with ibuprofen. Id.

---

[1]While the circumstances of this assault are shrouded in some confusion, Bryant reports that his assailant was a young man Bryant had encountered on only one occasion two years earlier. At the time of their first encounter Bryant was managing a fast food restaurant and alleges that he was forced to call police when an irate customer (the assailant) threatened violence against him.  In Bryant's account, Bryant and his former customer apparently reunited on a public bus, where the assailant angrily informed Bryant that their last altercation resulted in the customer being placed on probation for five years.  The assailant is alleged to have followed Bryant into a store where he physically assaulted him.

On August 11, 2011, Bryant protectively filed Title II and Title XVI applications for Disability Insurance Benefits and Supplemental Security Income.  In both applications Bryant alleged that he became unable to work on March 24, 2011, at the time of this assault,  due to depression, right hip problems, back pain, and HIV. (Admin Tr. 220).

On October 13, 2011, almost seven months after the assault, Bryant presented to Certified Physician's Assistant ("PA-C") Anessa Inman with complaints of middle and lower back pain.  (Admin Tr. 323).  Bryant initially reported that this pain was of gradual onset, and that his pain began approximately nine years ago.  Id.  He later clarified this statement in a way which tied his complaints to the onset of his claimed disability, alleging that he had lower back pain with radiation to the hips prior to the assault, but that his pain became much worse *after* the assault.  (Admin Tr. 295).  On examination, Bryant had a normal gait, normal lumbar lordosis, no tenderness to the lumbar spine on palpation, and a normal range of motion in the lumbar spine. (Admin Tr. 323).  Bryant's lower extremities were also normal on inspection, with normal palpation and range of motion, normal strength, and no joint instability – except that the straight leg raise test showed less than 60 degrees of flexion on the right side.  Id.  An x-ray of Bryant's lumbar spine taken five days later revealed only mild degenerative changes.  (Admin Tr. 322).

3

On November 2, 2011, Bryant presented to Certified Registered Nurse Practitioner ("CRNP") Marcia Ludlow with complaints of chronic lower back pain. (Admin Tr. 321).  Bryant also reported that he tested HIV positive in 1999.  (Admin Tr. 321).  Bryant was referred to orthopedics for treatment of his back pain, and was referred to infectious disease specialist Alina Popa for treatment of probable HIV exposure.  (Admin Tr. 320).  On November 21, 2011, it was confirmed that Bryant was HIV positive, but that he was asymptomatic.  (Admin Tr. 320).  In addition to providing treatment for Bryant's HIV, Dr. Popa also prescribed medications to treat Bryant's mental impairments.  (Admin Tr. 317).

On December 9, 2011, at the Social Security Administration's behest,  Bryant was examined by Dr. Thomas McLaughlin.   During the examination, Bryant complained of low back pain with radiation to the hips, and intermittent neck pain without radiation or radicular symptoms. (Admin Tr. 295-96). Dr. McLaughlin noted that Bryant ambulated with a normal gait, was able to stand unassisted, rise from a seated position, and step up and down from the examination table without difficulty, but was not able to stand on one foot at a time.  (Admin Tr. 297, 299).   Dr. McLaughlin also noted that straight leg raise was positive on the right to fifty degrees of elevation.  Id.  Bryant was unable to heel walk, toe walk, or walk heel to toe, and did not attempt to squat.  (Admin Tr. 299).  Examination of the cervical spine

4

revealed no tenderness, and no evidence of paravertebral muscle spasm.  Id.
Examination of the hips revealed no tenderness, redness, warmth, swelling, effusion,
laxity, crepitus, or clicks.  Id.  Examination of Bryant's dorsolumbar spine revealed
tenderness over the paravertebral muscle areas.  Id.  Based solely on his own
observations from a one-time examination and without an opportunity to review any
of Bryant's medical records, Dr. McLaughlin diagnosed Bryant with low back pain
secondary to lumbar degenerative spine disease possible disc on the right, right hip
pain likely secondary to trauma and degenerative joint disease, HIV positive, Asthma
history (quiescent now), hypertension, and tobacco use.  (Admin Tr. 300).

In a medical source statement, Dr. McLaughlin opined that Bryant could:
frequently lift or carry 2-3 pounds and occasionally lift or carry ten pounds; stand and
walk up to two hours per eight-hour workday; sit up to eight hours per workday with
alternating sitting and standing at will; and never bend, kneel, stoop, crouch, balance,
or climb.  (Admin Tr. 302-03).  Dr. McLaughlin also opined that Bryant could push
or pull with his extremities within his lift/carry limitations without further restriction,
and should avoid exposure to heights.  Id.

Given this medical backdrop, Bryant's social security claims were denied
initially on December 21, 2011.  Thereafter, Bryant requested, and was granted, an
opportunity to have his claims evaluated during an administrative hearing.

On January 10, 2012, prior to his administrative hearing, Bryant presented to the emergency department. (Admin Tr. 357). Bryant was voluntarily admitted for inpatient psychiatric care due to his worsening depression and suicidal thoughts that were exacerbated by the recent death of his mother. (Admin Tr. 352). On admission, a clinician initially assigned him a global assessment of functioning score of 25. (Admin Tr. 347). Hospital records reflect that Bryant had previously been admitted for inpatient care at the same facility in 2006, and Bryant reported several previous admissions in Georgia. Id. Bryant also reported a history of drug overdose in the late 1990's. Id. While receiving inpatient psychiatric care in 2012, Bryant was diagnosed with major depression and post-traumatic stress disorder, and was restarted on his medications. (Admin Tr. 344). His emotional and mental state rapidly improved and Bryant was discharged on January 12, 2012, with a GAF score of 65. Id.

On February 27, 2013, Bryant, with the assistance of counsel, appeared and testified at an administrative hearing in Harrisburg, Pennsylvania before Administrative Law Judge ("ALJ") Randy Riley. Impartial vocational expert ("VE") Paul A. Anderson also appeared and testified. Specifically, Bryant testified that he was unable to bend down and touch his toes, could not squat, could climb up to three flights of stairs, preferred not to climb ladders, could walk three blocks without resting, could stand up to ten minutes at one time, and could sit for up to one hour at

6

a time.  (Admin Tr. 56-58, 232-33, 235).  Bryant also reported that the symptoms related to his mental impairments worsened after the March 2011 assault.  (Admin Tr. 61-62).  Bryant reported that he experiences anger, suicidal thoughts, auditory hallucinations, racing thoughts, lack of energy, focal deficits, and difficulty concentrating.  (Admin Tr. 67-70, 232-33).  Bryant also testified that, following the assault, he developed a mistrust of strangers.  Id.  Bryant asserted that he could not sit through an entire television program because "it gets boring after awhile," but could read anything.  (Admin Tr. 69, 232, 273).  Despite his impairments, Bryant reported that he maintained his own personal hygiene, cooked "at times," did dishes "at times," did laundry, occasionally took out trash.  (Admin Tr. 55-56, 228-29). Bryant also testified that he does not have a driver's license, and had a friend drop him off in Camp Hill, Pennsylvania at the Market Street Bridge and walked to his hearing in downtown Harrisburg, Pennsylvania, a significant distance to traverse on foot.  (Admin Tr. 56).

On March 20, 2013, the ALJ denied Bryant's applications for benefits in a written decision.  In so doing, the ALJ found that Bryant met the insured status requirement of Title II of the Social Security Act through December 31, 2012, and then proceeded through steps one through five of the five-step sequential evaluation process.  At step one, the ALJ found that Bryant did not engage in substantial gainful

activity between March 24, 2011, and March 20, 2013. (Admin Tr. 40). At step two, the ALJ found that Bryant has the medically determinable severe impairments of degenerative disc disease, HIV, depression, and post-traumatic stress disorder ("PTSD"). Id. At step three, the ALJ found that Bryant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix I. Id.

Before proceeding to step four, the ALJ found that Bryant had the residual functional capacity to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except that he requires:

> a sit/stand option at will; is limited to occasional stairs, balancing, stooping, kneeling, crouching and crawling; should never climb ladders; must avoid concentrated exposure to hazards; and is limited to simple, routine, repetitive tasks, no interaction with the public and occasional interaction with coworkers but no tandem tasks.

(Admin Tr. 41-42). In doing so, the ALJ was required to weigh the medical and nonmedical source opinions of record in accordance with 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. The record in this case contains only one such opinion, by nontreating physician Dr. McLaughlin.[2]

---

[2]In his brief Bryant refers to a second RFC assessment by a nonexamining source. (Doc. 11 p. 12). Our review of the record, however, reveals that the assessment he refers to was completed by a single decision-maker ("SDM"). (See Admin Tr. 82-84). Courts have observed that a SDM is not a medical professional, and that such opinions are entitled to no evidentiary weight. See Yorkus v. Astrue,

At step four, relying on testimony by the VE, the ALJ found that Bryant was unable to perform his past relevant work as a fast food manager, warehouse worker, or cook because the physical or mental demands of each position exceeded what the ALJ determined to by Bryant's current functional capacity.  (Admin Tr. 44).

At step five, after making additional factual findings regarding Bryant's age, education, and work experience, and considering these factors together with Bryant's current functional capacity, the ALJ found that Bryant could perform "other work." (Admin Tr. 44-45).  The ALJ's determination in this regard was based largely upon testimony by the VE that Bryant could perform the occupations of injection molding machine tender (DOT 556.685-038) and sewing machine operator (DOT 786.685-030).  Id.  The VE also testified that the positions would (collectively) existed in 2,600 jobs in the local economy, 26,000 jobs in the regional economy, and 560,000 jobs in the national economy.  Id.  Based on this testimony, the ALJ concluded that the "other work" that Bryant could perform existed in significant numbers in the national economy.  As such, Bryant was deemed to be "not disabled."  Id.

Thereafter, Bryant sought review of the ALJ's decision by the Appeals Council.  Together with his request for review, Bryant submitted new evidence that was not before the ALJ when he issued his decision.  On April 2, 2014, the Appeals

---

No. 10-2197, 2011 WL 7400189, at *4 (E.D.Pa. Feb. 28, 2011).

Council denied Bryant's request for review, and noted that the new evidence did not pertain to the period under review – March 24, 2011 through March 20, 2013.

Bryant then initiated this action by filing a complaint on May 22, 2014. (Doc. 1). In his complaint, Bryant urges us to reverse the adverse decision of the Commissioner and enter an order awarding benefits, or in the alternative, remand this case to the Commissioner for a new hearing. On July 30, 2014, the Commissioner filed her answer to Bryant's complaint. (Doc. 7). In her answer, the Commissioner asserts that the ALJ's decision is supported by substantial evidence, and is in accordance with the law and applicable regulations. Together with her answer, the Commissioner filed a copy of the administrative record from below. (Doc. 8). Having been fully briefed by the parties, this matter is now ripe for decision. (Docs.11, 14, 15).

## III.  DISCUSSION

Bryant asserts that the ALJ's conclusion that he is "not disabled" is not supported by substantial evidence for two reasons. First, Bryant asserts that the ALJ's consideration of the report and medical source statement of examining, though nontreating, source Dr. McLaughlin is not in accordance with the applicable regulatory framework, and in the alternative, lacked adequate explanation. (Doc. 11 pp. 7-10, Doc. 15 pp. 1-3). Second, Bryant asserts that the ALJ's RFC assessment

10

does not comport with his obligations under Social Security Ruling ("SSR") 96-8p.

(Doc. 11 pp. 10-13, Doc. 15 pp. 3-7).

###   A.   STANDARDS OF REVIEW–THE ROLES OF THE ADMINISTRATIVE LAW JUDGE AND THIS COURT

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).

Furthermore,

[a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for his [or her], or whether he [or she] would be hired if

11

he [or she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. §1382c(A)(3)(B); see also 20 C.F.R. §§404.1505(a), 416.905(a).  Last, to qualify for benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the insurance program and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

## 1.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.  See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that a Bryant is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  As part of this analysis the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing

past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. Id.

Before considering step four in this process, the ALJ must also determine the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§ 404.1545, 416.945. In making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable nonsevere impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requirements. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the

13

substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he [or she] has rejected and which he [or she] is relying on as the basis for his [or her] finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### 2.   GUIDELINES FOR THE ALJ'S ASSESSMENT OF MEDICAL SOURCE OPINIONS

During the course of this sequential evaluation process, the ALJ is faced with the complex and delicate task of weighing or considering opinions by medical sources. The Social Security regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §§404.1527(a)(2), 416.927(a)(2). The Social Security Regulations define "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed

podiatrists, and qualified speech-language pathologists.   20 C.F.R. §§404.1513, 416.913.

It is clearly within the ALJ's authority to choose whom to credit when the record contains conflicting medical opinions.  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  However, since it is apparent that the ALJ "cannot reject evidence for no reason or the wrong reason."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(citing Mason, 994 F.2d at 1066), the ALJ must also provide an explanation as to why opinion evidence by acceptable medical sources has been rejected so that a reviewing court can determine whether the reasons for rejection were proper.  Cotter, 642 F.2d at 707.

The Social Security rulings and regulations provide a framework under which medical opinion evidence must be considered.  At the outset, we note that the Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories:  treating; examining; and non-examining.[3]  The Social Security Regulations also express a clear preference

---

[3]A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ongoing treatment relationship with the claimant.  20 C.F.R. §§404.1502, 416.902.  A nontreating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner.  Id.  A nonexamining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor.  Id.

for opinions by treating sources.  See Morales, 225 F.3d at 317 ("a cardinal principle

guiding  disability  eligibility  determinations  is  that  the  ALJ  accord  treating

physicians'  reports  great  weight,  especially  when  their  opinions  reflect  expert

judgment  based  on  a  continuing  observation  over  a  prolonged  period  of  time.").

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2):

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the
> nature and severity of [a claimant's] impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic techniques and
> is not inconsistent with the other substantial evidence in [the claimant's]
> case  record, [the ALJ] will give it controlling weight.

Id.; see also SSR 96-2p.  Furthermore, finding that the medical opinion of a treating

source  is  not  entitled  to  controlling  weight  does  not  mean  the  opinion  should  be

rejected.   SSR 96-2p, 1996 WL 374188, at *1.   In many cases, a treating source's

medical opinion will be entitled to great deference even where it is found to be non-

controlling.  Id.

Where the ALJ finds that no treating source opinion is entitled to controlling

weight,  the  regulations  provide  that  the  weight  of  all  non-controlling  opinions  by

treating, nontreating, and nonexamining medical sources should be evaluated based

on the following factors:  (1) the length of treatment and frequency of examination;

(2) the nature and extent of the treatment relationship; (3) the opinion's support by

medical evidence; (4) the opinion's consistency with the record as a whole; and (5)

16

the treating physician's specialization.  20 C.F.R. §§404.1527(c), 416.927(c).  In

addition, the ALJ should consider any other factors that tend to support or contradict

the opinion that were brought to his or her attention.  20 C.F.R. §§404.1527(c)(6),

416.927(c)(6).

### 3.   JUDICIAL REVIEW OF ALJ DETERMINATIONS–STANDARD OF REVIEW

Once the ALJ has made a disability determination, it is then the responsibility

of this Court to independently review that finding.  In undertaking this task, this

Court applies a specific, well-settled and carefully articulated standard of review.  In

an action under 42 U.S.C. § 405(g) or 42 U.S.C. §1383(c)(3) to review the decision

of the Commissioner of Social Security denying a claim for disability benefits, the

"findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a

deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

When reviewing the denial of disability benefits, we must simply determine whether

the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211,

1213 (3d Cir. 1988); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d

Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Bryant has been disabled since November 4, 2011, but whether the Commissioner's finding that he was not disabled prior to

April 1, 2012, is supported by substantial evidence and was reached based upon a

correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417,

2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's

errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v.

Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as

to the status of a claim requires the correct application of the law to the facts."); see

also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of

review on legal matters is plenary); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa.

2012)("[T]he court has plenary review of all legal issues . . . .").

### B.   THE ALJ PROPERLY ASSESSED THE MEDICAL SOURCE OPINION OF DR. MCLAUGHLIN UNDER THE FRAMEWORK ARTICULATED IN 20 C.F.R. §§404.1527(C) AND 416.927(C)

In his decision, the ALJ explained his consideration of Dr. McLaughlin's

medical source statement as follows:

> ... Dr. McLaughlin assessed the claimant with the capacity for a range
> of sedentary work, with a sit/stand opinion and total restriction of
> postural activities.  The objective clinical findings do not support the
> claimant is this limited.  There is no evidence of serious spinal
> pathology, upper extremity abnormalities, or a level of care to support
> such extreme limitations.  Therefore, the undersigned gives this opinion
> little weight.  Further the vocational expert identified jobs existing in
> significant numbers that the claimant could perform even with this
> extremely limited residual functional capacity.

(Admin Tr. 44).  Bryant contends that above-cited passage does not provide sufficient

explanation to permit judicial review, and that the ALJ's decision to discount Dr. McLaughlin's medical source statement fails to adequately account for the regulatory factors outlined in 20 C.F.R. §§404.1527(c) and 416.927(c).[3] (Doc. 11 pp. 7-10, Doc. 15 pp. 1-3).  We disagree.

As discussed above, although an ALJ may weigh the credibility of conflicting medical evidence, he must give some indication the evidence he or she rejects and his or her reasons for discounting that evidence.  See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).  An explanation is required so that the reviewing court can

---

[3]Bryant also contends that the ALJ's consideration of this opinion violates the tenets of 20 C.F.R. §§404.1527(f), 416.927(f), and SSR 96-6p.  We note that 20 C.F.R. §§404.1527(f) and 416.927(f) do not exist.  Section f of 20 C.F.R. §§404.1527 and 416.927 were redesignated 20 C.F.R. §§404.1527(e) and 416.927(e) in early 2012.  See How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10651-01, 10656 (Feb 23, 2012)(codified at 20 C.F.R., pt. 404 and 416).  Further, 20 C.F.R. §§404.1527(e) and 416.927(e) apply only to nonexamining sources.  Accordingly, because these provisions are inapplicable to Dr. McLaughlin (an examining source), we find that Bryant's argument that the ALJ has violated these provisions lack merit.

Similarly, SSR 96-6p addresses only the consideration of nonexamining source opinions.  It is unclear whether this ruling has any bearing on an ALJ's consideration of an opinion by a nontreating source who has examined the claimant.  Even if it does, the ruling provides additional guidance as to how nonexamining medical source opinions should be weighed in accordance with the factors articulated in 20 C.F.R. §§404.1527(c) and 416.927(c).  Because it is clear that the factors outlined in 20 C.F.R. §§404.1527(c) and 416.927(c) also apply to nontreating sources as well as nonexamining ones, we will construe Bryant's argument as raising the issue of whether the ALJ properly considered these regulatory factors in weighing the opinion of a nontreating medical source who has examined the claimant – instead of an argument under SSR 96-6p.

determine whether the reasons for rejection were proper.  <u>Cotter</u>, 642 F.2d 707.  To say that a decision is supported by substantial evidence in absence of such an indication approaches an abdication of the court's duty to scrutinize the record as a whole and determine whether the conclusions reached are rational.  <u>Id.</u> at 705.  Here, the ALJ's discussion clearly, albeit succinctly, explains that he discounted Dr. McLaughlin's medical source statement because it was unsupported by Dr. McLaughlin's clinical findings, and because it was inconsistent with the objective medical records –which we note were not available to Dr. McLaughlin.  (<u>See</u> Admin Tr. 300).  Those medical records, which Dr. McLaughlin did not see, included a series of unremarkable clinical findings, findings that did not support the claim of disability voiced by Bryant.  Given this other, substantial evidence, we find that the ALJ has met his obligation to sufficiently explain his decision to partially discount Dr. McLaughlin's medical source statement.  We also find that this rationale is a proper basis to discount a medical source opinion under the Social Security regulations.  <u>See</u> 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4)("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.");  20 C.F.R. §§404.1527(c)(3), 416.927(c)(3)("The more a medical source presents relevant evidence to support an opinion ... the more weight we will give that opinion.").

Next we must turn our attention to whether substantial evidence supports this interpretation of the evidence, and we find that it does.[4]  In his examination report, Dr. McLaughlin observed that Bryant:  ambulated normally without aid; could stand unassisted; could rise from a seated position without difficulty; and exhibited no tenderness, muscle weakness, loss of motor strength, or atrophy in his shoulders, elbows and wrists.  (Admin Tr. 297, 299-300).  These findings do not suggest that Bryant has any radical lift or carry restriction.  Consistent with the ALJ's opinion, diagnostic imaging revealed only "mild" degenerative changes in Bryant's spine, (Admin Tr. 292), and treatment records do not document any loss of function or exacerbation of his pain when lifting or carrying objects, though he did report that his condition was aggravated by sitting or coughing.  (Admin Tr. 323). Last, Bryant

---

[4]Bryant also suggests that the ALJ improperly relied on his own lay opinion to discount Dr. McLaughlin's medical source statement.  (Doc. 11 p. 8).  In support of this argument, Bryant relies on the Third Circuit case of VanHorn v. Schweiker where it was found that an ALJ improperly relied on his own observations regarding a claimant's emotional state to discount the otherwise consistent medical source opinions of record.  717 F.2d 871, 873-74 (3d Cir. 1983).  The facts of this case, however, are clearly distinguishable.  Unlike in VanHorn, the ALJ's decision in this case is not colored by his own observations or speculative medical judgments.  As noted herein, the ALJ relied on objective evidence (diagnostic imaging studies), a lack of any objective documentation for the physical symptoms alleged, and the conservative course of treatment recommended by treating sources to conclude that Bryant was not as limited as he alleged or as limited as Dr. McLaughlin – without having the benefit of these records – believed.  As such, we find that Bryant's suggestion that the ALJ improperly relied on his own expertise over that of a medical source lacks any arguable merit.

reported that he was able to perform certain household chores which involved lifting and carrying objects and postural maneuvers that exceed the limitations advocated by Dr. McLaughlin – i.e. doing laundry, taking out and burning bags of garbage, cooking, and doing dishes. (Admin Tr. 55-56).

### C.   THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Bryant alleges that the ALJ improperly assessed his residual functional capacity in violation of SSR 96-8p. (Doc. 11 p. 11). In this respect, Bryant's argument is twofold. First he asserts that substantial evidence does not support the ALJ's conclusion that he can engage in light work. (Doc. 11 pp. 11-13). Second, Bryant asserts that the ALJ's RFC assessment is fatally flawed due to the failure to address Bryant's difficulties in concentration, persistence or pace. Id. at 13-14.

### 1.   THE ALJ'S CONSIDERATION OF BRYANT'S PHYSICAL LIMITATIONS IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Light work is defined as work that involves listing no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. See 20 C.F.R. §§404.1567(b), 416.937(b); SSR 83-10, 1983 WL 31251 at *5-6 (explaining the definition of light work). To be able to carry objects on a frequent basis, an individual be capable of standing or walking for a total of six hours per eight-hour workday. Id. Bryant contends that the ALJ's conclusion that he can

23

physically meet these exertional demands is unsupported. We are constrained to note, however, that the ALJ did not conclude that Bryant could meet all of these exertional demands. Instead, the ALJ's decision reflected an assessment and incorporation of some limitations described by Bryant, when those limitations were supported by other evidence. (Doc. 11 pp. 11-13, Doc. 15 pp. 3-5). Further, we find that Bryant's assertion that he cannot perform the limited range of light work identified by the ALJ is meritless.

In this context, the term "exertional activity" refers to one of the primary strength activities – sitting, standing, walking, lifting, carrying, pushing, or pulling. SSR 83-10, 1983 WL 31251 at *5. Here, the ALJ found that Bryant could meet the full lifting and carrying requirements of light work, but could not meet the standing and walking requirements. Bryant accurately notes that, in his medical source statement, Dr. McLaughlin opined that Bryant's lift and carry limitations were consistent with sedentary, rather than light, work. Thus, we must consider whether substantial evidence supports the ALJ's finding that Bryant retains a greater than sedentary aptitude for lifting and carrying objects.

At the outset, we have already found that the ALJ cited a proper basis to discount Dr. McLaughlin's opinion – the evidence that forms the foundation of Bryant's argument – and that the ALJ's decision to discount Dr. McLaughlin's

opinion is supported by substantial evidence.  Further, we find that aside from Dr. McLaughlin's opinion, the record is devoid of any further support for Bryant's assertions regarding his claimed limitations on lifting and carrying objects.  As noted above, Bryant did not report any difficulty lifting or carrying objects to his treating sources.  Instead, he reported that his back pain was exacerbated by coughing, sitting, bending, standing, or walking for awhile.  (Admin Tr.  235, 323).  At the hearing Bryant testified that he does laundry and occasionally takes out trash.  He did not suggest that he had any difficulty lifting trash bags or laundry.  Further, examination records reflect that there was no evidence of nerve root compression, motor loss, neurological defects or muscle weakness in his extremities, and that Bryant had adequate grip strength, was able to make a fist, open a jar, open a door, pick up coins, write, and use both hands to button and unbutton.  Accordingly, we find that, because Bryant failed to show any evidence to support further limitation in the areas of lifting or carrying, and because there is some evidence in the record that suggests greater aptitude in these areas than alleged, we find that the ALJ's assessment is supported by substantial evidence.

Next, we turn our attention to the issue of whether a sit/stand option precludes the performance of light work.  As noted by Bryant, he testified that he could walk up to three blocks at a time, could stand up to ten minutes at a time, and could sit up

to one hour at a time.  (Admin Tr. 57-58).  The ALJ, apparently crediting this portion

of Bryant's testimony and Dr. McLaughlin's medical source statement, imposed a sit-

stand option.  SSR 83-12 recognizes that if "the medical facts lead to an assessment

of RFC which [is] compatible with the performance of either sedentary or light work

except that the person must alternate periods of sitting and standing," then the

"individual is not functionally capable of doing either the prolonged sitting

contemplated in the definition of sedentary work ... or the prolonged standing or

walking contemplated for most light work."  In such scenarios, it is recommended

that the adjudicator consult a vocational resource to clarify the implications for the

occupational base.  SSR 83-12.  The ALJ did so in this case.  The VE identified

several occupations within the realm of light work that an individual who – among

other exertional and nonexertional limitations – must be permitted to sit and stand at

will, could perform.  Thus, to the extent Bryant suggests that an inability to stand for

prolonged periods – when accompanied by an inability to sit for prolonged periods

– automatically precludes the performance of all light work, the VE's testimony belies

his argument.

**2.  THE ALJ PROPERLY ACCOUNTED FOR PLAINTIFF'S CREDIBLY ESTABLISHED LIMITATIONS IN FUNCTIONAL AREA OF CONCENTRATION, PERSISTENCE, OR PACE**

In his decision, the ALJ also addressed Bryant's nonexertional limitations at step three, and in his RFC assessment.  At step three, the ALJ found that Bryant had moderate difficulties in concentration, persistence, or pace due to decreased motivation, interest and concentration, but noted that Bryant was otherwise able to read, watch television, and perform basic activities of daily living, and that he retained sufficient ability to understand and carry out simple tasks and routines. (Admin Tr. 41).   Then in his RFC assessment, the ALJ limited Bryant to the performance of "simple, routine, repetitive tasks" to account for these limitations. (Id.)   Bryant contends that the ALJ's RFC assessment – and the hypothetical questions posed to the VE – do not adequately account for his limitations in the area of concentration, persistence, or pace.  (Doc. 11 pp. 13-15, Doc. 15 pp. 5-7).  Thus, we are called upon to decide whether the phrase employed by the ALJ in his hypothetical and RFC assessment – "simple, routine, repetitive tasks" – is sufficient to convey the moderate limitations in concentration, persistence, or pace found by the ALJ at step three.

Courts have addressed this issue on multiple occasions.  First, in Ramirez v. Barnhart, the Third Circuit held that a finding that a claimant "often" experienced

difficulty in concentration, persistence, or pace was not adequately conveyed where the ALJ limited a claimant to simple one to two step tasks. 372 F.3d 546, 554 (3d Cir. 2004). In subsequent administrative decisions, however, the Social Security Administration amended the scale used to rate the degree of limitation in the area of concentration, persistence or pace. The old scale was based on the frequency that a limitation would impact a claimant's activities (never, seldom, often frequent, constant), 20 C.F.R. §§404.1520a(b)(3) (1999), 416.920a(b)(3) (1999), while the current scale (used by the ALJ in this case) rates the overall severity of the limitation itself (none, mild, moderate, marked, extreme). 20 C.F.R. §§404.1520a(c)(4), 416.920a(c)(4). Neither the Administration nor the Third Circuit has offered any comment as to whether there is a correlation between the points on the frequency scale and the points on the severity scale.

The District Courts within this Circuit have addressed similar issues following this regulatory change with varying results. At least one district court has found that there is no correlation between the frequency and severity scales and questioned the continuing validity of Ramirez in cases involving the application of the severity scale. See Rodgers v. Colvin, No. 13-75, 2014 WL 4748907, at *1 n. 1 (W.D.Pa. Sept. 24, 2014). Other district courts have found the opposite and have held that Ramirez still applies because the terms "often" used in frequency regulations and the term

"moderate" found in severity rules are equivalent.  See Jury v. Colvin, 2014 WL

1028439 at *11 n. 21 (M.D.Pa. Mar. 14, 2014)(citing Strouse v. Astrue, No. 07-4514,

2010 WL 1047726, at *6 (E.D.Pa. Mar. 19, 2010); Dynko v. Barnhart, No. 03-cv-

3222, 2004 WL 2612260, at *5 (E.D.Pa. Nov. 16, 2004)).

We need not address this dispute because, assuming *arguendo* that Ramirez

does apply in this case, there are material differences between the facts in this case

and Ramirez which lead us to conclude that the ALJ's decision in this case should

still be affirmed.  In Ramirez, a medical expert testified that the claimant's anxiety

disorder could impair her ability to meet production quotas.  Unlike in Ramirez, here

Bryant did not allege that his impairments affected his pace – and there is no medical

evidence that suggests otherwise.  Similarly, in Ramirez, the VE testified that an

inability to meet production quotas would preclude the performance of all positions

identified, where as the VE did not make any similar assertion in this case.  Thus,

unlike in Ramirez, where the Court found that the restriction to simple one to two step

tasks did not account for a credibly established limitation to the claimant's ability to

maintain a production pace that would be acceptable to employers, there is no

evidence in this case that Bryant had such a limitation.  Accordingly, we find that the

ALJ adequately accounted for the credibly established limitations that fall within the

broad functional area of concentration, persistence, or pace when he limited Bryant

to the performance of simple, routine, repetitive tasks.  See McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(finding that the ALJ adequately accounted for a moderate limitation in concentration, persistence or pace by limiting the claimant to the performance of simple, routine tasks); Menkes v. Astrue, 262 Fed. Appx. 410, 412 (3d Cir. 2008)(finding that a restriction to simple routine tasks adequately accounted for a claimant's moderate limitations in area of concentration, persistence, or pace).

Thus, while we are sympathetic to the constellation of unfortunate events which Mr. Bryant has experienced, given the deferential standard of review which we must apply, we conclude that the ALJ's decision rests upon substantial evidence which has been adequately described and explained by the ALJ. These findings, in turn, call for affirmance of that decision.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, we will affirm the decision of the Commissioner.

An order consistent with this memorandum will be entered separately.